## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>EQUIPMENT ACQUISITION RESOURCES, INC.,<br><br>     Debtor | Chapter 11<br><br><br>Case No. 09-B-39937<br><br>Hon. Donald R. Cassling |
| WILLIAM A. BRANDT, JR., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>IBM CREDIT, LLC,<br><br>Defendant | <br><br><br><br>Adversary Proceeding No. 11-02227 |
| WILLIAM A. BRANDT, JR., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>TD BANKNORTH LEASING CORPORATION,<br><br>Defendant | <br><br><br><br>Adversary Proceeding No. 11-02582 |

## NOTICE OF MOTION
## WITH CERTIFICATE OF SERVICE

**TO:**   **SEE ATTACHED SERVICE LIST**

    **PLEASE TAKE NOTICE** that on **April 4, 2017** at **11:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Donald R. Cassling, in courtroom 619, or before any other Judge who may be presiding in said Judge's place and stead, at the United States Courthouse, 219 South Dearborn, Chicago, Illinois, and shall present: *Joint, Consolidated Motion in Limine and Memorandum of Law to Exclude the Expert Report and Testimony of Patrick O'Malley* and *Declaration of Counsel*, copies of which are hereby served upon you.

Dated: February 14, 2017

Respectfully  Submitted,

By:      /s/      Jeffrey D. Ganz
One  of  the  attorneys  for  TD  Equipment
Finance,  Inc.,  successor  by  merger  to  TD
Banknorth  Leasing  Corporation

Jeffrey D. Ganz (ARDC No. 6307515)
Riemer  &  Braunstein  LLP
71 S. Wacker Drive, Suite 3515
Chicago, Illinois   60606
Telephone:  (617) 880-3568
Facsimile:  (617) 692-3568

## CERTIFICATE  OF SERVICE

        I hereby certify that on February 14, 2017, I electronically filed the foregoing *Notice of
Motion, Joint, Consolidated Motion in Limine and Memorandum of Law to Exclude the Expert
Report and Testimony of Patrick O'Malley, Declaration of Counsel* and *Proposed Order* with the
clerk of Court  using  the  CM/ECF system;  copies of which will be  served  upon  the  following
parties  referenced  below  via  the  CM/ECF  notification  system  and  by  email  on  February 14,
2017:


*Attorneys for Plaintiff:*

Allan B. Diamond,  (*pro hac vice*)
adiamond@diamondmccarthy.com
J. Maxwell  Beatty (*pro hac vice*)
mbeatty@diamondmccarthy.com
Frances Ellenbogen  (*pro hac vice*)
fellenbogen@diamondmccarthy.com
Diamond  McCarthy LLP
909 Fannin,  Suite  1500
Houston, Texas 77010


                                         /s/ Jeffrey D. Ganz
                                         Jeffrey  D.  Ganz

1946455.1

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>EQUIPMENT ACQUISITION RESOURCES, INC.,<br><br>      Debtor | Chapter 11<br><br><br>Case No. 09-B-39937<br><br>Hon. Donald R. Cassling |
| WILLIAM A. BRANDT, JR., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>IBM CREDIT, LLC,<br><br>Defendant | Adversary Proceeding No. 11-02227 |
| WILLIAM A. BRANDT, JR., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>TD BANKNORTH LEASING CORPORATION,<br><br>Defendant | Adversary Proceeding No. 11-02582 |

## JOINT, CONSOLIDATED MOTION *IN LIMINE* AND MEMORANDUM OF LAW TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF PATRICK O'MALLEY

## INTRODUCTION

The Plaintiff's sole burden in this case is to establish that the payments received by Defendants TD Equipment Finance, Inc., successor by merger to TD Banknorth Leasing Corporation ("TDEF") and IBM Credit, LLC ("IBM Credit"), were made by Debtor Equipment Acquisition Resources, Inc. ("EAR") with the actual intent to hinder, delay, or defraud EAR's creditors under 11 U.S.C. §548(a)(1)(A) and 740 ILCS 160/5(a)(1). The Plaintiff has not alleged, nor is he seeking to prove, that these payments were constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) or 740 ILCS 160/5(a)(2). As a result, the Plaintiff is not required to prove that EAR was, in fact, insolvent at the time the payments were made in order to establish his prima facie case.

Instead, the Plaintiff seeks to introduce the expert opinion and report of his partner and colleague, Patrick O'Malley, to establish a so-called "badge of fraud" to assist the Court in concluding that the payments made to TDEF were, in fact, made with fraudulent intent. While it is not uncommon for plaintiffs to rely upon circumstantial evidence to establish fraudulent intent when direct evidence may not be readily available, using Mr. O'Malley's opinion to establish that evidence in this case would be inappropriate because Mr. O'Malley's conclusions of insolvency are grounded on his belief that a fraud occurred. More specifically, the only way that Mr. O'Malley was able to conclude that EAR was insolvent was to first conclude that EAR was engaged in a massive fraud. Accordingly, his analysis of EAR's solvency begins with – and is premised upon – his conclusion that EAR engaged in fraud. Mr. O'Malley was not, however, engaged to opine as to the existence of a fraud at EAR and any opinion testimony that EAR was engaged in fraudulent conduct would constitute an inadmissible legal conclusion in any event.

2

By presenting this opinion to the Court, the Plaintiff is engaging in the circular logic that can be described as having the following steps:

1.   Because EAR engaged in fraud, its assets were of questionable value;

2.   Because EAR's assets had questionable value, EAR was insolvent;

3.   Because EAR was insolvent, EAR engaged in fraud.

Where Mr. O'Malley's opinion assumes the fact that the Plaintiff is asking the Court to find (i.e., that the payments were made with fraudulent intent) it cannot assist the Court in determining that fact.

More specifically, the Plaintiff should be barred from admitting into evidence the expert report and opinion of Mr. O'Malley because: (1) Mr. O'Malley did not employ a valid, reliable and recognized methodology in reaching his opinion of insolvency; (2) Mr. O'Malley's methodology and approach in assessing insolvency is flawed; (3) Mr. O'Malley's opinion that EAR conducted fraudulent transactions constitutes an inadmissible legal conclusion; and (4) Mr. O'Malley's conclusion that EAR was insolvent because it was operating a fraud cannot establish the existence of the fraud on which his conclusion is based.

## PLAINTIFF'S CLAIMS AGAINST TDEF

The Plaintiff filed the initial Complaint in this case on December 8, 2011, and ultimately filed the Third Amended Complaint ("TAC") on July 3, 2013. *See* D.N. 56. In the TAC, the Plaintiff originally sought to avoid and recover thirty-five separate payments totaling $6,187,281.11 allegedly made to TDEF during the four-year period leading up to the date on which EAR filed its voluntary petition. *See Id. (TAC)*, Exs. A and B. By the *Agreed Order Granting TD Equipment Finance, Inc.'s Motion for Partial Summary Judgment* [D.N. 175], the Plaintiff's claims concerning all or a portion of nine of these payments were dismissed, leaving the Plaintiff to pursue avoidance and recovery from TDEF of payments totaling $3,360,226.27.

3

Count I of the TAC seeks to avoid these payments as actual fraudulent transfers under 11 U.S.C.

§ 548(a)(1)(A). Count II of the TAC seeks to avoid them as actual fraudulent transfers under

740 ILCS 160/5(a)(1) (the Illinois Uniform Fraudulent Transfer Act ("IUFTA")). Count III of

the TAC now seeks to avoid the two most recent payments as preferential transfers under 11

U.S.C. § 547. Count IV of the TAC seeks to recover the value of all of these transfers under 11

U.S.C. § 550. Count V of the Complaint seeks to disallow any claim held by TDEF against EAR

under 11 U.S.C. § 502(d) until TDEF pays the Plaintiff the amount of the challenged transfers.

In support of his fraudulent transfer claims under the Bankruptcy Code and the IUFTA, the

Plaintiff alleges the existence of certain badges of fraud, including insolvency, to support his

claim that the challenged transfers were made with the actual intent to defraud EAR's creditors.

*See* TAC ¶¶ 68, 74.

## PLAINTIFF'S CLAIMS AGAINST IBM CREDIT

On July 3, 2014, the Plaintiff filed its Third Amended Complaint against IBM Credit.

Therein, Plaintiff sought the recovery of twenty-five (25) loan re-payments from EAR to IBM

Credit, totaling $4,689,810.81. On January 17, 2017, this Court partially granted IBM Credit

summary judgment on a payment of $279,028.23. (Case No. 11-02227. Doc. No. 233.) Thus, the

Plaintiff now seeks to recoup twenty-four (24) loan re-payments totaling $4,410,782.58. Count I

of the TAC seeks to avoid those re-payments under 11 U.S.C. § 548(a)(1)(A), and Count II seeks

to avoid them under 740 ILCS § 160/5(a)(1). Count III seeks to recover the value of any avoided

transfers under 11 U.S.C. § 550. Count IV seeks a disallowance of IBM Credit's claim under 11

U.S.C. § 502(d). As is the case with the claims against TDEF, in support of his claims, the

Plaintiff attempts to allege certain badges of fraud (including insolvency) to support his claim

that the loan re-payments to IBM Credit were made with the requisite fraudulent intent.

**PLAINTIFF'S  PROPOSED  SOLVENCY  EXPERT  REPORT  AND  TESTIMONY**

Mr. O'Malley's lone assignment in this case was "to determine whether [EAR] was

solvent or insolvent as of the dates of certain transfers …." Declaration of Counsel ("Counsel

Dec.")[1] Ex. A (Expert Report of Patrick J. O'Malley (the "Report")) at p. 1.[2]  In performing this

assignment, Mr. O'Malley took a number of admittedly unorthodox steps including (i) leaving a

blank space on an adjusted balance sheet for assets that he knew to have existed, but was unable

to – or simply refused to – place a value, and (ii) completely disregarding an arm's length

negotiated agreement to purchase 80% of EAR only months before it filed its Chapter 11

petition.

Unlike a traditional solvency analysis where the amount of all of an entity's liabilities are

subtracted from the value of all of its assets to determine whether the result is positive (i.e,

solvent) or negative (i.e., insolvent), Mr. O'Malley intentionally omitted certain assets from the

equation and then solved for the value of those assets that would need to exist in order for EAR

to be solvent.  *See* Counsel Dec. Ex. B, transcript of the deposition of Patrick J. O'Malley

("O'Malley Dep.") at 55.  Specifically, Mr. O'Malley began his analysis with the audited and

reviewed balance sheets prepared by EAR's accountants, but ultimately eliminated all of EAR's

inventory and equipment from those balance sheets.  *See* Report, p. 4, 6-7, Exs. 2(A) through

2(D).  He refused to include either category of assets in his balance sheet analysis, despite

knowing that EAR did, in fact, own inventory and equipment for each of the years in question

(2005, 2006, 2007, and 2008).  *See* O'Malley Dep., at 55.  He has also confessed that he had no

insight into the value of those assets during that four year period.  *See id*.  O'Malley admitted he

---

[1] In light of the large volume of documentation included as exhibits to the Declaration of Counsel, we have elected
to file that document only in the TDEF adversary proceeding.
[2] The Report attached as Exhibit A to the Counsel Dec. is nearly identical to the expert report that Mr. O'Malley
filed in the IBM adversary proceeding, which report is incorporated herein and can be made available upon the
request of the Court or any party.

is not, and has never been, a licensed appraiser. *Id.* at 12. Nor is he familiar with the Uniform

Standards of Professional Appraisal Practice. *Id.* He also failed to take into account any of

appraiser Joel Gonia's appraisals of EAR's inventory in reaching his opinions. *Id.* at 318-20.

There is no dispute, of course, that these asset categories were EAR's only significant assets.

Nevertheless, Mr. O'Malley refused to attribute any value to EAR's inventory and equipment

because he believed that EAR had engaged in a series of fraudulent lease transactions described

in his report. *See* Report, at 2-3, 6-7.

In explaining the process he followed in reaching his opinion, Mr. O'Malley

acknowledged that his approach to the balance sheet solvency test was a novel one that he has

not used in any other bankruptcy case. *See* O'Malley Dep. at 55-56. He also said that he was not

aware of this approach being adopted or approved by any treatise or other independent source.

*Id.* He also acknowledged being aware of the offer to purchase 80% of EAR, but omitting it

entirely from his analysis – to the degree of even refraining from reviewing the prospective

purchaser's transcript from the deposition taken in this adversary proceeding. *Id.* at 185-87; *see

also*, Counsel Dec., Ex. D (Ron Miller deposition transcript ("Miller Dep.")) p. 81-90, and Ex. E.

(Exhibit 5 to Miller Dep. (the "Red Oak Complaint") and Exhibit 2 to the Red Oak Complaint

(the "Stock Purchase Agreement").

Mr. O'Malley also admits that his conclusion that EAR was insolvent was entirely

dependent upon his belief that EAR was engaged in a fraud. *See* O'Malley Dep., at 249 ("the

knowledge of the fraud and the nature of the fraud is what allowed me to make the adjustments

to the historical financial statements …"). While Mr. O'Malley acknowledged that he was not

retained to opine on the existence of any fraud at EAR he repeatedly refers to "fraudulent

transactions" and a "fraudulent scheme" throughout his report and concludes that "[m]y opinion

is that EAR would not have been able to continue in business in 2005 through 2009 without new

funds generated from additional fraudulent transactions." *See id.,* at 238, 249*; see also,* Report

pp. 3-4; 6-8; and 10.

## ARGUMENT

### I.     The Legal Requirements under *Daubert.*

Expert testimony is inadmissible under Rule 702 of the Federal Rules of Evidence unless

it is based on reliable knowledge and methodology. See *Daubert v. Merrell Dow*

*Pharmaceuticals,* 509 U.S. 579 (1993); *Navarro v. Fuji Heavy Industries, Ltd.,* 117 F.3d 1027,

1032 (7th Cir. 1997). "Under *Daubert*, a court must determine not only that the witness is

qualified but also that the testimony is reliable and relevant." *Gecker v. Flynn, (In re Emerald*

*Casino, Inc.),* 530 B.R. 44 (N.D. Ill. 2014). The Court's gatekeeping function under Fed.R.Evid.

702 requires consideration of, among other things, whether "the expert's reasoning or

methodology underlying the testimony [is] scientifically reliable" and whether "the

testimony…assist[s] the trier of fact to understand the evidence or to determine a fact in issue."

*Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007) (citations omitted). "The

purpose of the court's gatekeeping function [under Rule 702] is 'to make certain that an expert,

whether basing testimony upon professional studies or personal experience, employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field.'" *BP Amoco v. Flint Hills Res.,* 2009 U.S. Dist. LEXIS 131272 (N.D. Ill. June 4,

2009) (*quoting Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

In determining whether the methodology underlying the testimony is sound, *Daubert*

provides a number of relevant considerations, including: "(1) whether the scientific theory on

which the expert's testimony is based can be or has been tested; (2) whether the theory has been

7

subjected to peer review and publication; (3) the known and potential rate for error; and (4) whether the theory has been generally accepted in the relevant scientific, technical, or professional community." *United States v. Mire,* 725 F.3d 665, 674-75 (7th Cir. 2013) (*citing Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 593-94 (1993)); *see also Gecker v. Flynn (In re Emerald Casino, Inc.),* 530 B.R. 44, 216 (N.D. Ill. 2014) (the gatekeeping function outlined in *Daubert* applies equally to all expert testimony).

Further, "[a]n expert's opinion carries no weight unless the facts he relies on to reach his conclusions are also proven." *Sears Roebuck and Co. v. Savoy Reinsurance Co. Ltd.,* 1991 U.S. Dist. LEXIS 16329, *20 (N.D. Ill.); *see also United States v. Brown,* 7 F.3d 648, 652-53 (7th Cir. 1993) ("expert testimony [must] be rejected if it lacks an adequate basis in fact"). An opinion or conclusion based on a mere hunch, speculation or conjecture – even from a witness qualified as an expert in the field – has no evidentiary value or reliability. *See Rosen v. Ciba-Geigy Corp.,* 78 F.3d 316, 319 (7th Cir. 1996) ("an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process"). "'The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard' by a preponderance of the evidence." *BP Amoco,* 2009 U.S. Dist. LEXIS 131272 *6 (*quoting Lewis v. CITGO Petroleum, Corp., 561 F3d 698, 705 (7th Cir. 2009)).*

## II.     O'Malley's Expert Opinion is Not Based on a Valid, Reliable Methodology.

Central to the Court's *Daubert* inquiry is the determination of whether the "methodology underlying that testimony is sound." *BP Amoco v. Flint Hills Res.,* 2009 U.S. Dist. LEXIS 131272 *4 (June 4, 2009 N.D. Ill) (*citing Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir. 2000)). The Court "must look behind [the expert's] ultimate conclusion…and analyze the adequacy of its foundation." *Mid-State Fertilizer Co. v. Exchange Nat'l Bank,* 877 F.2d 1333,

1339 (7th Cir. 1989) (internal quotation marks and citations omitted). Generally, this requires a finding that the methodology applied by the proposed expert is at least recognized in the relevant profession or by the courts as a valid and reliable methodology.

The Bankruptcy Code provides that a debtor is deemed insolvent to the extent that "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation…" *See* 11 U.S.C. § 101(32)(A). Similarly, under IUFTA a debtor is defined as insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 740 ILCS 160/3. In addition, a "debtor who is generally not paying his debts as they become due is presumed to be insolvent" under Illinois law. 740 ILCS 160/3(b).[3]

"Under the Bankruptcy Code and the IUFTA, there are three tests to determine whether an entity is insolvent: (1) the "balance sheet" test; (2) the "inadequate capital" test; and (3) the "inability to pay debts as they become due" test. *See Paloian v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. of Hyde Park),* 507 B.R. 558 (Bankr. N.D. Ill. 2013) (*citing* 11 U.S.C.S. 101(32); 740 ILCS 160/3). "Under the balance sheet test for insolvency, an entity is insolvent if it has a 'financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . .'" *Id.* (*quoting* 11 U.S.C. § 101(32)(A); 740 ILCS 160/3(a)).

Mr. O'Malley relies on the balance sheet test acknowledging in the Report that in order to opine on the solvency of EAR, he must determine whether the value of EAR's assets exceeded the value of its debts at the time of each challenged transfer. *See* Report p. 2; O'Malley Dep. p. 301-302. Mr. O'Malley admits, however, that he did not actually value all of the Debtor's assets in this case. *See* O'Malley Dep p. 235-236 ("I didn't actually value [the equipment and inventory]…"). Instead, Mr. O'Malley relies on his own novel methodology pursuant to which

---

[3] Insolvency cannot be presumed in this case as Mr. O'Malley admits that EAR was paying its debts as they became due in 2005-2008. *See* O'Malley Dep. p. 188-89.

he concludes that EAR must have been insolvent without actually calculating or valuing its assets at any given time. *Id.* ("…what I did was did a calculation of how much would they have to be valued at in order for the company to be considered solvent. And based on those numbers determined that there's no way that the equipment and inventory could have been worth that much at those periods of time"). Essentially, Mr. O'Malley claims that he can conclude that EAR's assets do not exceed the value of its liabilities without determining the value of its assets.

Specifically, Mr. O'Malley testified that the approach he took in this case was to rely on the calculations in EAR's books and records for purposes of valuing EAR's debts, but to disregard those same books and records for purposes of valuing EAR's assets, asking "how much would the aggregate of all those assets need to be worth in order for this to be solvent at certain points in time." *See* O'Malley Dep. p. 121-123. He concedes that he is not aware of any support for this approach and states that his methodology is based "just on logic" as opposed to an accepted professional standard or recognized scientific approach. *See* O'Malley Dep. p. 313-314, 324. Indeed, Mr. O'Malley testified that the methodology he used in opining on EAR's solvency in this case has not been recognized in any publication or treatise as a valid method for determining insolvency. *See* O'Malley Dep. p. 53-54; 56. "The trier of fact is presumed to be able to think and reason on its own. An expert is not employed in litigation to 'think' for the trier of fact." *Summers v. UAL Corp. ESOP Comm.*, 2005 U.S. Dist. LEXIS 23918*10 (N.D. Ill. October 12, 2005). Because Mr. O'Malley's methodology has not been accepted or relied upon as a valid approach to solvency analysis, the report and proposed expert testimony fail to meet the standards required for admission under *Daubert* and should be excluded at trial in this case.

### III.   Mr. O'Malley's Methodology is Flawed and Unreliable.

The Bankruptcy Code defines "insolvency" as a "financial condition such that the sum of such entity's debt is greater than all of such entity's property, at a fair valuation...." 11 U.S.C. § 101(32). The IUFTA employs a similar definition. *See* 70 Ill. Comp. Stat. 160/3.

> "The Seventh Circuit's interpretation of this definition requires courts to determine what a willing buyer would pay for the debtor's entire package of assets and liabilities. *Covey v. Commercial Nat'l Bank of Peoria*, 960 F.2d 657, 660 (7th Cir. 1992). If the price is positive, the debtor is solvent; if the price is negative, the debtor is insolvent. *Id.*"

*Brandt v. Rohr-Alpha, Inc. (In re Equip. Acquisition Res.)*, 2015 Bankr. LEXIS 437, *12 (Bankr. N.D. Ill February 9, 2015); *see also, Paloian,* 507 B.R. at 632 ("[w]hether a debtor is insolvent under the balance sheet test is determined by analyzing what a willing buyer would have given for the debtor's entire package of assets and liabilities at the relevant time." (citations omitted)).

In this case, Plaintiff and Mr. O'Malley had evidence available to them of an arm's length agreement to purchase 80% of the shares of EAR in early 2009 for $18 million. *See* Counsel Dec. Ex. B, O'Malley Dep., 185-86, Ex. C (Exhibit 17 to the O'Malley Dep.); Ex. D, Miller Dep., and Ex. E (Red Oak Complaint and Ex. 2 Stock Purchase Agreement). The buyer was so motivated to pursue this deal that it actually brought suit against EAR and its principals when they failed to move forward with the sale. *See* O'Malley Dep., at 186; Miller Dep., 81-90, Ex. 5. Notwithstanding these facts, Mr. O'Malley elected to omit any reference to this agreement in the Report, excluded the evidence from his analysis, and even failed to review the deposition transcript of the buyer's principal taken in this adversary proceeding. *See* O'Malley Dep. at 185-87.

Moreover, Mr. O'Malley's solvency conclusion based on his untested and unverified methodology also lacks reliability in light of the fact that many of the "adjustments" Mr.

O'Malley makes to the balance sheet in reaching his conclusion are premised on faulty assumptions not grounded in reliable data or supported by any recognized professional standards or authorities. For example, Mr. O'Malley reduced the value of EAR's accounts receivables as reported on its financial statements to eliminate all transactions between MTD and EAR involving $100,000.00 or more based on his conclusion that such transactions were "fraudulent." *See* O'Malley Dep. at 132-33. Mr. O'Malley admitted during his deposition, however, that the $100,000 figure he relied on in making his adjustments was "just an arbitrary figure that I was comfortable that transactions above that level were truly fraudulent." O'Malley Dep. at 427.[4] He did not elaborate or provide any authority to support his reasoning for believing transactions over that arbitrary amount were fraudulent and of zero value to EAR at any particular point in time. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner,* 522 U.S. 136, 46 (1997).

Mr. O'Malley's Report and analysis are based on speculative and unreliable assumptions and an untested and unreliable method for determining the value of the assets and liabilities on which his insolvency opinion is premised. Because Mr. O'Malley's flawed methodology has not been accepted as a valid and reliable method for determining solvency by any recognized authority on solvency analysis, his conclusion that EAR was insolvent is necessarily unreliable and fails to meet the basic requirements for admissibility under *Daubert* and Rule 702. Accordingly, Mr. O'Malley's expert report and proposed expert opinion testimony should be excluded at trial in this case.

---

[4] Moreover, Mr. O'Malley assumed that any transaction with MTD over $100,000 was fraudulent and was therefore not considered an asset or value to EAR even if there was no evidence that MTD took any commission or was paid for its part in the transaction in accordance with the fraudulent scheme Mr. O'Malley describes regarding the circular transactions with EAR and MTD on which his fraud conclusion is based. *See* O'Malley Dep. at 403.

## IV.    Mr. O'Malley's Opinion that EAR Conducted Fraudulent Transactions is an Inadmissible Legal Conclusion.

Expert witnesses "may not testify 'as to legal conclusions that will determine the outcome of the case' under Rule 702." *Scottsdale Ins. Co. v. City of Waukegan*, 689 F. Supp. 2d 1018, 1022 (N.D. Ill. 2010) (*quoting Good Shepherd Manor Found. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003) (excluding expert testimony that consisted of legal conclusions)); *In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815, 844 (N.D. Ohio 2010) (expert report stricken where it included "blatantly improper legal conclusions. [Expert] shows no hesitation in opining as to the Sureties' alleged fraudulent intent . . . .").

Mr. O'Malley's conclusions that EAR committed fraud extend beyond the permissible scope of expert testimony – and the scope of his engagement in this case - and should be excluded as inadmissible legal conclusions concerning the ultimate issue in the case.[5]  *See Ass'n Ben. Servs., Inc. v. AdvancePCS Holding Corp.*, No. 04 C 3271, 2005 WL 2335484, at *4 (N.D. Ill. Sept. 23, 2005) ("Dr. Kravis' opinions regarding the fraud claim fare no better. Dr. Kravis defines fraud by setting forth a definition from Black's Law Dictionary. He then summarizes documents and other evidence he reviewed and reaches the conclusion that AdvancePCS committed fraud by deliberately deceiving ABS. His conclusion that AdvancePCS committed fraud extends beyond the permissible scope of expert testimony."); *Amari Co. v. Burgess*, No. 07 C 01425, 2012 WL 5389787, at *15 (N.D. Ill. Nov. 2, 2012) ("Defendants . . . object to Newman's testimony about legal issues that will determine the outcome of the case, such as whether ITA committed fraud. The Court will not allow such testimony. . . . The Court also grants the motion to exclude Breeman as an expert. At the risk of sounding like a broken record,

---

[5] As with the approach he took to evaluating solvency, Mr. O'Malley admitted that his efforts to determine whether a fraud occurred at EAR and the nature of that alleged fraud did not follow any recognized methodology for uncovering fraudulent conduct. *See* O'Malley Dep., at 260.

Breeman's disclosed opinion — that the defendants did not participate in fraud — is a legal conclusion he is unqualified to make and which is not properly the subject of expert testimony."); *Apotex Corp. v. Merck & Co.*, No. 04 C 7312, 2006 WL 1155954, at *8 (N.D. Ill. Apr. 25, 2006) (excluding expert opinion: "Much of Apotex's expert testimony . . . consists of plainly inadmissible legal conclusions concerning Merck's alleged fraud and would be completely unhelpful to the fact finder."); *Klackzak v. Consolidated Med. Transp., Inc.*, No. 96 C 6502, 2005 WL 1564981, *8, 10 (N.D. Ill. May 26, 2005) (holding that expert could not testify that defendants committed fraud within the meaning of the Anti-Kickback statute); *Dahlin v. Evangelical Child & Family Agency,* No. 01 C 1182, 2002 WL 31834881, *3 (N.D. Ill. Dec. 18, 2002) ("Lorandos may not testify regarding opinions 4 and 5 — that Evangelical's actions constituted fraud.").

Despite the fact that Mr. O'Malley was not engaged to opine as to the existence of a fraud at EAR, the Report repeatedly refers to purported "fraudulent transactions," a "fraudulent scheme," "fraudulent invoices," "fraudulent accounts receivable," "fraudulent sales transactions," "fraudulent lease transactions," and "fraud." *See, generally*, Report, These phrases reflect improper conclusions that exceed the scope of permissible expert testimony and, as such, should be excluded from introduction as evidence at trial either through the Report or testimony. Any opinion that the transactions involving EAR and MTD – particularly those involving equipment financed by TDEF – were "fraudulent" would be an improper legal opinion that could determine the outcome of this adversary proceeding. *See Dahlin*, 2002 WL 31834881, at *4 (barring expert from testifying as to whether defendant was "honest" in certain answers for same reasons as barring him from testifying that defendants committed fraud); *Apotex*, 2006 WL 1155954, at *8 ("several judges in this district, including this Court, have held that expert

testimony is not helpful to a trier of fact when the expert simply opines that an individual acted dishonestly or fraudulently, issues traditionally resolved by a trier of fact").

**V.       Plaintiff Cannot Rely on His Expert's Opinion to Prove the Fraud on Which the
          Expert's Opinion is Based.**

          "An expert's opinion carries no weight unless the facts he relies on to reach his conclusions are also proven." *Sears Roebuck and Co. v. Savoy Reinsurance Co. Ltd.,* 1991 WL 247583 at *6, 1991 U.S. Dist. LEXIS 16329 at *20 (N.D. Ill.). "An expert's testimony cannot be used to subvert rules of evidence." *In re CSI Enterprises, Inc.,* 220 B.R. 687, 696 (Bankr. D. Colo. 1998). In this case, the Court is being asked to accept the expert's assumption of the ultimate issue in the case – the existence of fraud and the alleged fraudulent scheme at EAR – as evidence of the existence of the fraud. *See TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732 (10th Cir. 1993) (by assuming certain projections underlying lost profit opinion, the expert "assumed the very matter at issue on which he was called to express his opinion").

          The Plaintiff's sole purpose for seeking to introduce Mr. O'Malley's opinion in this case is to establish a badge of fraud in support of the Plaintiff's claim that the challenged transfers were made with actual intent to hinder, delay, or defraud EAR's creditors. Mr. O'Malley's conclusions, however, are premised almost entirely on his belief that EAR was engaged in the very fraudulent conduct that his opinion is submitted to establish. *See* Report, at 2-3, 6-7. Mr. O'Malley's opinion that EAR was insolvent as a result of EAR's fraud cannot be relied upon by the Plaintiff as evidence of the fraud. The circular reasoning underlying the Plaintiff's reliance on Mr. O'Malley's proposed expert opinion renders the expert report and testimony insufficient to assist the Court in determining fraudulent intent – which is the sole reason the solvency opinion is sought to be admitted at trial – in connection with Plaintiff's actual fraud transfer claims.

Just as Mr. O'Malley's reliance on EAR's financial statements and books and records does not render those documents admissible or reliable, Mr. O'Malley's assumption of the existence of a fraud cannot prove the existence of the fraud. *Fisher v. Sellas (In re Lake States Commodities, Inc.),* 272 B.R. 233, 243-44 (Bankr. N.D. Ill. 2002) (*citing TK-7 Corp.,* 993 F.2d at 732 ("The fact that [the expert] relied upon the report in performing his calculation of lost profits did not relieve the plaintiffs from their burden of proving the underlying assumptions contained in the report")). An expert report that assumes the fact on which his testimony is sought to establish is of no assistance to the Court. *See TK-7 Corp.,* 993 F.2d at 732 (by assuming certain projections underlying lost profit opinion, the expert "assumed the very matter at issue on which he was called to express his opinion").

Because Mr. O'Malley's expert report and testimony concerning EAR's insolvency is founded on his assumption that a fraud exists, no weight can be given to his insolvency opinion absent the Plaintiff establishing the existence of the fraud and actual intent through other evidence. Of course, if the Plaintiff is able to meet his burden of establishing fraud without establishing insolvency as a badge of fraud, then the Mr. O'Malley's opinion, report, and testimony concerning EAR's solvency would be unnecessary and superfluous since the issue they are being offered to establish would have already been determined. Accordingly, Mr. O'Malley's report and testimony should be excluded as irrelevant and insufficient to establish a badge of fraud to support a finding of actual intent in this case.

## CONCLUSION

Mr. O'Malley's solvency expert report and opinion testimony fail to meet the reliability and relevance requirements for admission under *Daubert* and should be excluded as circular and insufficient to assist the Court in determining actual fraudulent intent in this case. In addition,

Mr. O'Malley should be precluded from presenting any opinion (whether through testimony or the Report) that EAR engaged in fraud, fraudulent transfers, or other fraudulent conduct, because doing so exceeds the scope of permissible testimony for an expert witness when that is the ultimate legal issue in the case. For all of these reasons, the expert report and testimony of Patrick J. O'Malley must be excluded at trial in this case.

Respectfully submitted,

By:    /s/    Jeffrey D. Ganz
One of the attorneys for TD Equipment Finance, Inc., successor by merger to TD Banknorth Leasing Corporation

Jeffrey D. Ganz
Riemer & Braunstein LLP
71 S. Wacker Drive, Suite 3515
Chicago, Illinois  60606
Telephone: (617) 880-3568
Facsimile: (617) 692-3568

By:    /s/ Stephen Pugh
One of the attorneys for IBM Credit, LLC

Stephen H. Pugh
Jorge V. Cazares
Jonathan B. Cifonelli
Pugh, Jones & Johnson, P.C.
180 North LaSalle St., Suite 3400
Chicago, Illinois  60601
Tel: (312) 768-7800
Fax: (312) 768-7801

2096580.5